1   H. Scott Leviant (SBN 200834)
    e-mail: SLeviant@InitiativeLegal.com
2   Payam Shahian (SBN 228406)
    e-mail: PShahian@InitiativeLegal.com
3   Linh Hua (SBN 247419)
    e-mail: LHua@InitiativeLegal.com
4   Initiative Legal Group, APC
    1800 Century Park East, 2nd Floor
5   Los Angeles, California 90067
    Telephone: (310) 556-5637
6   Facsimile: (310) 861-9051

7   Attorneys for Plaintiff Joshua Munoz

8

9                UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  JOSHUA MUNOZ, individually, and on        Case No.: CV 09-833 ODW (VBKx)
    behalf of other members of the general
13  public similarly situated,                [DISCOVERY MOTION]

14              Plaintiff,                     CLASS ACTION

15       vs.                                   **JOINT STIPULATION
                                               REGARDING PLAINTIFF'S**
16  J. C. PENNEY CORPORATION, INC.,            **MOTION TO COMPEL
    a Delaware Corporation;                    DEFENDANT'S FURTHER**
17  J. C. PENNEY COMPANY, INC., a              **RESPONSES TO**
    Delaware Corporation; and,                 **INTERROGATORY NO. 1**
18  DOES 1 through 10, inclusive,

19              Defendants.                     Date:      August 25, 2009
                                               Time:      10:00 a.m.
20                                             Place:     Courtroom 934H

21                                             Judge:     Hon. Victor B. Kenton

22

23                                             Date Filed:      May 19, 2008
                                               Date Removed:    February 3, 2009
24                                             Disc. Cut-Off:   February 15, 2010
                                               Trial Date:      May 4, 2010
25

26

27

28

_Case No._: CV 09-833 ODW (VBKx)          Page 1
**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1

## TABLE OF CONTENTS

2

3  TABLE OF CONTENTS ........................................................................... i

4  I.    INTRODUCTORY STATEMENTS ............................................................ 1

5        A.   Moving Party's (Plaintiff's) Introduction ............................................ 1

6              1.   Defendant Should Be Compelled to Produce Class Member

7                   Identities and Contact Information ................................................ 1

8              2.   Meet and Confer Efforts, and Plaintiff's Proposal to Resolve

9                   This Dispute ............................................................................ 2

10       B.   Responding Party's (Defendant's) Introduction .................................. 4

11 II.   INTERROGATORY NO. 1 AND DEFENDANT'S RESPONSE ................. 5

12       A.   Interrogatory No. 1 Propounded by Plaintiff: ...................................... 5

13       B.   Defendant's Response to Interrogatory No. 1: ..................................... 5

14 III.  CONTENTIONS OF PLAINTIFF .............................................................. 6

15       A.   Class Member Identities and Contact Information Are Relevant

16            And Important Pre-Certification Discovery ......................................... 6

17            1.   Class Member Contact Will Likely Provide Evidence

18                 Supporting Plaintiff's Rule 23 Motion for Certification ............... 6

19            2.   Class Member Contact Will Likely Provide Evidence

20                 Refuting Defendant's Anticipated Defenses Against

21                 Certification ......................................................................... 11

22            3.   A Stale Sampling Of Just Former Employees Is Insufficient ....... 12

23       B.   Defendant's Privacy Objection Should Be Overruled ......................... 15

24       C.   Defendant's "Overbroad" Objections Should Be Overruled .............. 18

25       D.   Relief Requested: Defendant Should Be Compelled to Produce

26            the Names and Contact Information of All Class Members ................ 18

27 IV.   CONTENTIONS OF DEFENDANT .......................................................... 19

28       A.   RELEVANT FACTS ........................................................................... 19

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1**

B.   DISCUSSION ........................................................................ 22

1.   The District Court May Limit Pre-certification Discovery .......... 22

2.   The Purpose of the Class Action Vehicle, in Large Part, is to Adjudicate *Common* Issues of Law and Fact ............................... 23

3.   Plaintiff Has Made No Showing Why Such Information Is Necessary or Helpful To His Class Certification Motion ........... 25

4.   Without Any Proffered Necessity For the Additional Names, the Privacy Rights of 55,000 Individuals Outweigh Plaintiff's Right to Discovery ...................................................... 26

5.   Compelling Defendant to Turn Over the Remaining 55,000 Names Will Disrupt Its Business ................................................ 27

6.   Plaintiff Has Equal Access to the Putative Class ........................ 28

7.   If the Court is Inclined to Grant Plaintiff's Motion, Defendant Requests That The Court Order Only Another Portion of the Putative Class and Not the Remainder ................. 29

V.   CONCLUSION ......................................................................... 29

A.   Plaintiff's Conclusion .......................................................... 29

B.   Defendant's Conclusion ....................................................... 30

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  **JOINT STIPULATION FOR DISCOVERY MOTION**

2  **I.    INTRODUCTORY STATEMENTS**

3      **A.    Moving Party's (Plaintiff's) Introduction**

4      On May 19, 2008, Plaintiff filed a proposed class action in Los Angeles

5  County Superior Court against Defendants J. C. Penney Corporation, Inc. and J.

6  C. Penney Company, Inc.  Plaintiff alleged various wage & hour violations

7  against Defendants.  On February 3, 2009, Defendants served a Notice of

8  Removal.

9      Pursuant to Federal Rule of Civil Procedure 23, Plaintiff anticipates filing

10  a motion for class certification.  Plaintiff intends to support that motion with

11  testimony obtainable only from putative class members.  Accordingly, on or

12  about May 26, 2009, Plaintiff propounded Interrogatories, Set One, to Defendant

13  J.C. Penney Corporation, Inc. ("Defendant"), seeking all putative class members'

14  names and contact information.  On or about June 26, 2009, Defendant objected

15  to Plaintiff's request and refused to respond.

16      1.    <u>Defendant Should Be Compelled to Produce Class Member</u>

17      <u>Identities and Contact Information</u>

18      Class members' names and identities are discoverable.  Both state and

19  federal law recognize that class members' names and contact information

20  provide a crucial mechanism for plaintiffs to obtain the information needed to

21  support a class certification motion – particularly in employment law violation

22  cases where, as here, the prospective class members exposed to the alleged

23  violations are, by definition, the key witnesses.  Yet, despite meet and confer

24  efforts, Defendant refused to provide names and contact information for all of

25  the approximate 65,000 putative class members, and, instead, insisted that the

26  names and contact information of 10,000 *former* putative class members (a large

27  portion of whom are unreachable due to the staleness of the data), provided for

28  purposes of a mediation in this matter, were all that needed to be produced.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   There are serious implications to Defendant's refusal to provide class

2   member contact information.  Defendant, alone, will have access to all 65,000

3   witnesses, and exclusive access to current employees, while Plaintiff will have

4   access to less than 20% of the putative class members, and, then, only *former*[1]

5   employees.  However, direct witness testimony is essential to prove the unpaid

6   rest break premium allegations because there will rarely be adequate

7   documentary evidence to establish the class-wide occurrence of such violations.

8   And direct witness testimony is important to providing the variety of evidence

9   that a trial court must consider when evaluating a motion for class certification.

10  Plaintiff thus seeks an order compelling Defendant to produce names and contact

11  information for all non-exempt California employees, and without an

12  unnecessary and dilatory "opt-out" privacy notice procedure.

14              2.    Meet and Confer Efforts, and Plaintiff's Proposal to Resolve
15                    This Dispute

16  Following the receipt of Defendant's June 26, 2009 objections, Plaintiff's

17  counsel wrote to Defendant's counsel, on or about July 6, 2009, requesting an

18  opportunity to meet and confer.  (Declaration of H. Scott Leviant (Leviant

19  Decl.), ¶ 12.)  To facilitate the discussion, Plaintiff explained in the letter his

20  position as to each of Defendant's objections.  (*See* Ex. C to Leviant Decl.)

21  Counsel for the parties met in-person on July 16, 2009.  (*See* Leviant

22  Decl., 14).  Plaintiff proposed, as a compromise offer:

23              a.  Plaintiff would accept data for 50% of the remaining putative class

24                  members, so long as the 50% sample was selected with a verifiably

---

26  [1] On July 16, 2009, during the parties' Local Rule 37-1 conference,
27  Defendant first advised Plaintiff that some small, unidentified subset of
    individuals whose names and contact information were previously disclosed as
28  former employees, have since been rehired by Defendant.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

random methodology, such as the selection of every other name
from an alphabetic list and so long as Defendant supplied the
missing data for those putative class members already identified for
Plaintiff;

b.  Plaintiff would agree to an "opt-out" privacy notice procedure,
whereby every putative class member in the 50% sample would be
provided a written mailing, advising them of the discovery request
and providing them with a postcard that could be used to object to
the production of their contact information and related data;

c.  Plaintiff would pay for the costs of the privacy notice
administration.

(Leviant Decl., ¶ 16.)  Defendant did not accept or reject the proposal at that
time, having sent counsel without authority to enter into agreements to the July
16, 2009 meeting.  (Leviant Decl., ¶ 14.)  However, after Plaintiff insisted on a
response to their proposal, Defendant responded by rejecting the compromise
offer.  Instead, Defendant stated that it would provide the missing data for the
prior group of putative class members and nothing more.  (Leviant Decl., ¶ 19.)

Because Plaintiff must now move to compel further responses, Plaintiff
believes that an Order compelling a complete response to Plaintiff's
Interrogatory is appropriate.  Given that the instant case is a class action, the
names and contact information of *all* class members are necessary to substantiate
the elements of class certification and to anticipate Defendant's defenses to
certification. Any privacy interests could be protected by the parties entering into
a stipulated protective order prohibiting the dissemination of the class members'
identities and contact information outside of this litigation.

Because of the limited time available, and in light of Plaintiff's rebuffed
efforts to propose a reasonable compromise, Plaintiff now requests an Order
compelling the production of class member identity and contact information, to

be produced within 5 days of the issuance of any Order compelling such production.

### B.    Responding Party's (Defendant's) Introduction

Plaintiff has had contact information for 10,000 putative class members since December 2008.  The issue before the Court is not whether Plaintiff is entitled to contact information, but whether they have made the necessary showing that Defendant J.C. Penney Corporation, Inc. ("Defendant" or "J.C. Penney")[2] must turn over contact information for an additional 55,000 putative class members.  Plaintiff has failed to cite a single case that has decided this exact issue.  Indeed, the case law in the area of class action discovery is well-settled and permits the trial court to limit discovery depending upon the unique circumstances of each case.  As such, Plaintiff does not have a right to the contact information for 55,000 more individuals as a matter of course.

Defendant has acted in good faith and produced contact information for approximately 10,000 current and former employees.  Despite this sample, which is many multiples more than the amount suggested by the complex panel state court judge initially assigned to this case, Plaintiff demands contact information for the balance of the putative class without any legitimate discovery necessity. Plaintiff has failed to demonstrate how the information for 10,000 current and former employees is insufficient.  Plaintiff also completely ignores the additional policies and documents that J.C. Penney has agreed to produce in connection with his claims.  Despite Plaintiff's assertion that his claims can be properly brought as a class action, he now argues that it is necessary to speak with each putative class member.  Such a request inherently contradicts the basic purpose

---

[2] Defendant J.C. Penney Company, Inc. did not operate stores in California at any time since May 19, 2004.

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

of the class action vehicle. Plaintiff cannot speak out of both sides of his mouth. Either he proceeds to establish his claims on a class action basis, or his claims require individual analysis. Both cannot be true. Defendant maintains that Plaintiff's meal and rest periods claims must be adjudicated on an individual basis and that Plaintiff has more than enough data and information to arrive at the same conclusion. Accordingly, Defendant requests that Plaintiff's Motion be denied.

## II.     INTERROGATORY NO. 1 AND DEFENDANT'S RESPONSE

### A.     Interrogatory No. 1 Propounded by Plaintiff:

INTERROGATORY NO. 1: For every individual employed by Defendant J.C. Penney Corporation, Inc. in a non-exempt job position in the State of California at any time since May 19, 2004, provide the following information:

    a. the individual's full name;

    b. the individual's last known address;

    c. the individual's last known telephone numbers;

    d. all of the individual's job titles;

    e. the individual's starting and ending dates of employment; and,

    f. the individual's work site or sites by store number and city.

(Exhibit A, to Leviant Decl.)

### B.     Defendant's Response to Interrogatory No. 1:

Defendant objects to this interrogatory on the grounds that it is vague, ambiguous, and overly broad, particularly as to the phrase, "non-exempt job position in the State of California." To the extent

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

such phrase is overbroad, Defendant objects on the ground that it
seeks information that is not relevant to the pending action or
reasonably calculated to lead to discovery of admissible evidence.
Defendant also objects to this interrogatory on the ground that it is
premature because no class has been certified. Defendant objects to
this interrogatory on the grounds that it is unduly burdensome,
harassing and oppressive. Defendant further objects to this
interrogatory to the extent it invades the privacy of Defendant's
current and former employees. Subject to and without waiving these
objections, Defendant responds as follows: Defendant has already
provided Plaintiff with contact information for a random sample of
10,000 non-exempt employees working in its California stores
between May 2004 and November 2008.

(Exhibit B, to Leviant Decl.)

## III.    CONTENTIONS OF PLAINTIFF

### A.    Class Member Identities and Contact Information Are Relevant And Important Pre-Certification Discovery

1.    <u>Class Member Contact Will Likely Provide Evidence Supporting Plaintiff's Rule 23 Motion for Certification</u>

Prior to filing a Rule 23 motion for certification, the parties are entitled to conduct discovery in order to provide the court with evidence outside the pleadings that support (or refute) certification.  *See Kamm et al. v. California City Development Company et al.*, 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses."); *Armstrong v. Davis*, 275 F.3d 849, 872 fn 28 (9th Cir. 2001) (District Court may permit class discovery to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   determine whether class certification is appropriate*)*; *Stewart v. Winter*, 669 F.2d

2   328, 331 (5th Cir. 1982) ("in most cases a certain amount of discovery is

3   essential in order to determine the class action issue and the proper scope of a

4   class action") (internal quotation omitted).

5       Among other things, the names and contact information of the prospective

6   class members is discoverable pre-certification, because "[contact with class

7   members] could lead to the discovery of admissible evidence relevant to the

8   class certification issue." *Babbitt v. Albertson's, Inc.*, 1992 U.S. Dist. LEXIS

9   19091 at *16-*17 (N.D. Cal. December 1, 1992) (motion to compel identities of

10  40,000 prospective class members in employment discrimination class action

11  granted over employer's objections based on privacy and burden grounds).

12      It is well-established that prospective class members can provide probative

13  information concerning certification.  For instance, in a class action brought on

14  behalf of discharged or demoted employees under the Age Discrimination in

15  Employment Act of 1967 (ADEA), 29 U.S.C.S. § 621 et seq., the United States

16  Supreme Court held the contact information of the discharged employees was

17  discoverable, as follows:

18      The District Court was correct to permit discovery of the names and

19      addresses of the discharged employees.  Without pausing to explore

20      alternative bases for the discovery, for instance that the employees

21      might have knowledge of other discoverable matter, we find it

22      suffices to say that the discovery was relevant to the subject matter

23      of the action and that there were not grounds to limit the discovery

24      under the facts and circumstances of this case.

25  *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also, e.g., Int'l*

26  *Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (in class

27  action alleging discrimination, use of declaration testimony supported inferences

28  provided by statistical analysis; testimony about "personal experiences with the

---

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S**
**FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    company brought the cold numbers convincingly to life").

2         Particularly in wage and hour class actions, federal courts have recognized

3    prospective class members as being essential witnesses. *See Ho v. Ernst &*

4    *Young, LLP*, 2007 U.S. Dist. LEXIS 37700 at *3 (N.D. Cal. May 9, 2007)

5    ("contact information is relevant to *both* the merits and class certification");[3]

6    *Wiegele v. Fedex Ground Package System*, 2007 U.S. Dist. LEXIS 9444 at *5

7    (S.D. Cal. February 8, 2007) ("the Magistrate Judge [properly] determined that

8    putative class members possess relevant discoverable information concerning

9    issues dealing with Plaintiff's wage and hour claims, as well as class certification

10   issues"); *Sanbrook v. Office Depot*, 2009 U.S. Dist. LEXIS 30852 at*2 (N.D.

11   Cal. March 30, 2009) (same); *Jimenez v. Domino's Pizza*, LLC, 2006 U.S. Dist.

12   LEXIS 66510 (C.D. Cal. January 13, 2006) (same); *Babbitt*, 1992 U.S. Dist.

13   LEXIS 19091 at *16-*17 (ordering production of names, contact information

14   and social security numbers of 40,000 class members in discrimination action).

15        Likewise, the California Supreme Court and intermediate appellate court

16   have universally held that class member contact information is essential for

17   supporting class certification motions and is thus uncontroversially discoverable.

18   *See Pioneer Electronics (USA), Inc.*, 40 Cal. 4th 360 (in consumer class action,

19   "[c]ontact information regarding the identity of potential class members is

20   generally discoverable, so that the lead plaintiff may learn the names of other

21   persons who might assist in prosecuting the case"); *Belaire-West Landscape,*

22   *Inc.*, 149 Cal. App. 4th 554, 562 ("The current and former employees are

23   potential percipient witnesses to Belaire-West's employment and wage practices,

24   and as such their identities and locations are properly discoverable."); *Puerto v.*

25

26           [3] Additionally, in *Ho* and the following cases cited by Plaintiff, all of the

27   same objections raised by Defendant were expressly overruled, and the District
     Courts determined that the moving plaintiff was entitled to the identities and

28   contact information of *all*, and not just some, of the prospective class members.

*Super. Ct. (Wild Oats)*, 158 Cal. App. 4th 1242, 1249-50 (2008) (class members are also percipient witnesses, and their contact information is discoverable).

In fact, under California law, the information potentially garnered from class members is so highly probative of certification that a California trial court's denial of certification will be reversed if the named-plaintiff is denied access to the class members. *See Lee v. Dynamex, Inc.*, 166 Cal. App. 4th 1325, 1338 (2008) ("Because of the trial court's erroneous discovery order [denying named-plaintiff's motion to compel class members' identities and contact information], Lee lacked the means to develop evidence capable of supporting his motion for class certification"). And new authority from the Ninth Circuit implicitly requires Plaintiff to have access to information necessary to support certification; in this matter, unfettered access to putative class members will provide an important source of that information. In the matter of *In re: Wells Fargo Home Mortgage* (9th Cir. July 7, 2009), Case No. No. 08-15355, the Ninth Circuit held that a District Court abused its discretion when it certified an overtime misclassification case by relying almost exclusively upon the defendant's policies.

Here, to avoid a similar result, Plaintiff must submit a spectrum of evidence supporting certification. While policies and their application will likely provide one important part of that spectrum, evidence of the actual experiences of putative class members, and the areas of relative uniformity of those experiences, will provide another important part of that spectrum. As a result, denying Plaintiff access to the putative class members would place Plaintiff in the impossible position of having to make an evidentiary showing without access to the very information that this Court may need to examine as part of its assessment of Plaintiff's Motion for Class Certification.

Corporate handbooks and procedure manuals concerning Defendant's time-keeping system, meal and rest break policies, and overtime scheduling

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

policies are plainly relevant to the wage-and-hour claims brought here. However, it is often the case that a company's facially-compliant employment *policies* do not seamlessly result in compliant day-to-day *practices*.  Thus the internal documents are frequently insufficient in and of themselves to support certification.  Internal company documents will typically require the testimony of the prospective class members to corroborate both compliance and non-compliance with company policies, which often track Labor Code statutes.

In addition, despite company policies that exactly or proximately recite the California Labor Code verbatim, class members are likely to have information about *other* polices – formal and informal – that give rise to violations of the Labor Code (and other company policies).  For instance, staffing policies that are so finely built on marginal-analysis that the smallest disruption in expected business volume results in labor shortages can, in turn, lead to missed meal and rest breaks, as retail employees abandon their lunch a few minutes into it to help at the register or assist overflow customers.  Class member contact is also likely to support Plaintiff's claims that common questions of fact and law predominate with respect to each claim, notwithstanding the often-asserted contentions that store location or size destroys commonality.

The information gained from class members is especially probative of claims that are not otherwise well-supported by written evidence.  Employers must keep written records of meal breaks, but not rest breaks.  Accordingly, while Plaintiff intends to support meal period claims, in part, by conducting an analysis of time records to show the frequency of short, late or completely missed meal periods, the same analysis may be incapable of supporting Plaintiff's rest period claims.[4]

_____

[4] Also, class members might have complained about, for instance, the failure to receive a meal period.  Or, a class member may have been instructed

1    Accordingly, Defendant's relevancy objections should be overruled.

2

3         2.    <u>Class Member Contact Will Likely Provide Evidence</u>

4               <u>Refuting Defendant's Anticipated Defenses Against</u>

5               <u>Certification</u>

6    Class members not only have information likely to support certification,

7    but there is the distinct probability that they will also have evidence that rebuts

8    Defendant's anticipated defense. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain

9    discovery regarding any nonprivileged matter that is relevant to any party's

10   claim **or defense**.") (Emphasis added.) Large companies that do business in

11   many locations throughout California commonly oppose class certification in

12   wage-and-hour cases by attempting to demonstrate that the practices and

13   procedures vary by store location so significantly that there can be no

14   predominance of class-wide questions of fact or law.[5]

15   The only effective way to rebut this evidence is to allow the named-

16   plaintiff to have equal access to all prospective class members in the first

17   instance, thereby leveling the playing field by permitting the named-plaintiff and

18   their counsel to contact witnesses from each store, both current and formerly-

19   employed class members, to assist in rebutting any presumption that the

20   violation was limited in scope or subject to individual store-level

21

22   _____

23   by their manager to work off-the-clock or face certain consequences. Without
     access to the class members, it is unlikely that the information held by the class

24   members will ever reach the very people who have undertaken the responsibility
     of representing them.

25   [5] This argument is used so often that it is known in the field as the

26   "geographic disparity" argument. Evidence of geographic disparity often takes
     the form of counter-declarations, which were obtained by the employer's
     attorneys, who showed up at the place of employer's business, armed with a

27   briefcase full of declarations, to politely ask (with the store manager looking on)
     whether the hourly-paid employees would sign a declaration affirming that they

28   never participated in any violations.

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S**
**FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    determinations.[6]

2          Accordingly, the identities and contact information of the prospective class

3    members is either directly relevant to the defense, or will likely lead to the

4    discovery of admissible evidence of any defense.

5

6                3.    A Stale Sampling Of Just Former Employees Is Insufficient

7          Defendant refused to provide the prospective class members' names and

8    contact information, and, instead, insisted that Plaintiff accept identity and

9    contact information for a fraction of the total class, consisting only of *former*

10   employees.  (*See* Defendant's Response to Plaintiff's Interrogatories, Set One,

11   Ex. B to Leviant Decl.)  During the meet and confer process, Defendant

12   suggested that they would supply the missing final job title, employment dates

13   and store assignments for that group of former employees.[7]  (*See* Leviant Decl. ¶

14   19).  However, Defendant refused to provide the requested information for all

15   class members, or even for the 50% sample proposed by Plaintiff.

16         Defendant's view of what constitutes fair and equal access to witnesses is

17   unreasonable.  *All* witnesses and prospective class members are likely to have

18   relevant information.  Defendant's "response" violates the most basic notion of

19   fair play, which requires all parties to have equal access to relevant information.

20   In short, Defendant would be in a vastly superior litigation position by having

21   access to 100% of the witnesses, while Plaintiff would be left with access to

22   around 11% of the witnesses, drawn almost exclusively from *former* employees.

23   _____

24         [6] On the other hand, if the employer is correct that the violations are
25   isolated, then contact with the purported class members by the named-plaintiff
     may in fact persuade their counsel to limit the scope of the class or to abandon it
     altogether, thereby increasing judicial economy.
26
         [7] For purposes of a mediation only, Plaintiff accepted the offer to provide
27   Plaintiff with contact information for 10,000 *former* employees.  However, for
     purposes of unfettered investigation in connection with a motion for class
28   certification, the sample is too restricted and too suspect for Plaintiff to accept it.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    (*Id.*, ¶ 15).[8]

2        Allowing one party to control access to *all* relevant discovery, while

3    denying equal access to other parties, is contrary to the discovery rules.

4    "Generally, the purpose of discovery is to remove surprise from trial preparation

5    so the parties can obtain evidence necessary to evaluate and resolve their

6    dispute." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal.

7    1998); *see also Jimenez*, 2006 U.S. Dist. LEXIS 66510 at *3 (ordering pre-

8    certification production of the identities of all prospective class members in

9    wage-and-hour class action); *Campbell v. Wood,* 18 F.3d 662, 723 (9th 1994)

10    ("We ordinarily understand that the truth is most readily uncovered when each

11    party has equal access to the evidence").

12        The principle that all parties have equal access to discovery, including

13    access to *all* prospective class members, was articulated in another wage-and-

14    hour class action. *See Wiegele*, 2007 U.S. Dist. LEXIS 9444 at *11. In ordering

15    the pre-certification production of all prospective class members over the

16    objection of the employer, the court in *Weigele* found California authority

17    persuasive, as follows:

18        As noted in *Koo v. Rubio's Restaurants, Inc.,* 109 Cal.App.4th 719,

19        736, 135 Cal. Rptr. 2d 415 (2003), [B]efore class certification has

20        taken place, all parties are entitled to "equal access to persons who

21        potentially have an interest in or relevant knowledge of the subject

22        of the action, but who are not yet parties." (*Atari, Inc. v. Superior*

23        *Court, supra,* 166 Cal.App.3d at p. 869). Moreover cases have

24        stressed "the importance of permitting named plaintiffs to

25

26

27         [8] There are approximately 65,000 class members. The contact information

28    given to Plaintiff for purposes of mediation probably includes, at best, about
7,500 names with either a current address or a current phone number.

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S**
**FURTHER RESPONSES TO INTERROGATORY NO. 1**

1    communicate with persons for whose benefit their action was

2    ostensibly filed." (Citations omitted).

3  *Id*.

4    Finally, in *Ho*, this issue was squarely addressed.  The employer in *Ho*

5  objected to the disclosure of identities and contact information of the prospective

6  class members, though agreed to provide 25% of the names pursuant to an opt-

7  out notice procedure.  *Ho*, at *4-*5.  After the named-plaintiff received the

8  contact information for the limited sample, he filed a motion to compel all

9  remaining names.  *Id.*  The employer argued that the plaintiff already had access

10  to approximately 20% of the entire class, which should result in sufficient

11  information to move for certification.  *Id.*, at *6.  The court disagreed, stating,

12  "defendant's frustration that plaintiff will not agree to a compromise does not

13  affect plaintiff's right to seek all relevant non-privileged discovery." *Id.*  The

14  court granted the plaintiff's motion to compel the identities of all remaining

15  prospective class members.  *Id.; and see also, e.g., Babbitt*, 1992 U.S. Dist.

16  LEXIS 19091 at *15, *17 (ordering the production of 40,000 prospective class

17  members' names and contact information).

18    Given that Defendant can make use of their unfettered access to all

19  prospective class members in support of their opposition to certification, it is

20  manifest that Plaintiff should be provided access to the same information to

21  advance the class claims brought on behalf of those same class members.  *See*

22  *Pioneer*, 40 Cal. 4th at 374 (failing to produce the identities of all prospective

23  class members only benefits the party preventing disclosure, to the detriment of

24  the plaintiff and the putative class members for whom the litigation was

25  brought).  Thus, Plaintiff is entitled to an order directing Defendant to produce

26  all prospective class members' names and contact information.

27

28

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**B.    Defendant's Privacy Objection Should Be Overruled**

Third-party privacy rights are not a federally recognized privilege. Instead, third-party privacy rights are a state recognized privilege in a federal action based on diversity jurisdiction. Fed. R. Evid. 501; *Star Editorial, Inc. v. United States Dist. Court for the Cent. Dist. of Cal. (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993). Rule 501 of the Federal Rules of Evidence provides that privileges should be evaluated under federal common law, unless "an element of a claim or defense as to which State law supplies the rule of decision." This case is predicated entirely upon the California Labor Code. As a state-based privilege, California law governs the extent of the privilege. California has determined that discovery of class member contact information is essential in class actions, and particularly in class actions predicated upon violations of California's Labor Code and related regulations. *See Pioneer*, 40 Cal. 4th at 371-75 and *Belaire-West*, 149 Cal. App. 4th at 562. Thus, California decisions on the right of privacy of prospective class members in the context of class action are controlling. Recognizing that fact, the District Court opinions cited above have all followed California State law and have overruled the privacy objections of defendants.

An employee's right to privacy is acknowledged under the California Constitution; however, in the class action context, case law universally holds that privacy objections will not be sustained. For example, *Pioneer* unambiguously held that:

> Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations] Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    life, such as mass-marketing efforts or unsolicited sales pitches.

2    *Id*. at 373.  The *Pioneer* court found that a balancing of interests was not even

3    necessary because the defendant was unable to show a serious invasion of the

4    class members' privacy.  *Id.; see also Belaire-West*, at 562 (employees do not

5    have a reasonable expectation of privacy, especially given that current and

6    former employees could be reasonably expected to want their information

7    disclosed to a class action plaintiff who might ultimately recover for them unpaid

8    wages they were owed); *Puerto*, 158 Cal. App. 4th at 1259 (because the privacy

9    interests at stake were minimal, trial court abused its discretion by requiring an

10    "opt-in" procedure before witness contact information could be released to the

11    named-plaintiff's counsel).

12        The contact information of putative class members, who are witnesses in

13    the action, must give way to the plaintiff's right to discovery.  Thus, in recent

14    decisions, even the "opt-out" approach has been found by California courts to be

15    unnecessary.  *See, e.g.*, *Puerto*, 158 Cal. App. 4th 1242 (writ of mandate issued

16    holding that limiting plaintiff's access to class members in a wage and hour class

17    action by an opt-in notice was an abuse of discretion; disclosure was ordered).

18    In *Alch v. Superior Court*, 165 Cal. App. 4th 1412 (2008), the Court of Appeal

19    applied the privacy analysis of *Valley Bank of Nevada v. Superior Court,* 15 Cal.

20    3d 652 (1975) and *Pioneer* to the policies identified in *Puerto*; after doing so, the

21    *Alch* Court overruled third-party objections to the disclosure of personal data that

22    went beyond basic contact information and included (1) work history

23    information and (2) demographic data.  *Alch*, 165 Cal. App. 4th at 1432-1440.

24    Even more recently, in *Crab Addison, Inc. v. Superior Court (Martinez),* 169

25    Cal. App. 4th 958 (2008), the Court of Appeal rejected the use of "opt-in"

26    privacy notices and voided an employer-obtained, putative objection from

27    employees to the disclosure of their contact information.  The *Crab Addison*

28    Court also affirmed the Trial Court's Order that simply required the defendant to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    respond discovery requesting contact information.  *Id*. at 965, 975.

2        Federal Courts have also ordered the production of contact information

3    over the purported privacy interests of the class members, as advanced by the

4    violating employer.  *Wiegele*, 2007 U.S. Dist. LEXIS at *6 ("[T]he privacy

5    interests at stake in the names, addresses, and phone numbers must be

6    distinguished from those more intimate privacy interests such as compelled

7    disclosure of medical records and personal histories"); *Tierno v. Rite Aid Corp.*,

8    2008 U.S. Dist. LEXIS 58748 (N.D. Cal. July 31, 2008) (privacy objection

9    overruled; employer ordered to turn over contact information of class members);

10   *Babbitt*, 1992 U.S. Dist. LEXIS 19091 at *16-*17 (N.D. Cal. December 1, 1992)

11   (motion to compel identities of 40,000 prospective class members in

12   employment discrimination class action granted over employer's objections

13   based on privacy and burden grounds); *Ho*, 2007 U.S. Dist. LEXIS 37700 at *3

14   (N.D. Cal. May 9, 2007) ("contact information is relevant to both the merits and

15   class certification"); *Sanbrook*, 2009 U.S. Dist. LEXIS 30852 at*2 (N.D. Cal.

16   March 30, 2009) (same); *Jimenez*, 2006 U.S. Dist. LEXIS 66510 (C.D. Cal.

17   January 13, 2006) (same). In *Wiegele*, the District Court followed the now-

18   settled California approach that permits the plaintiff access to contact

19   information without first providing notice to the putative class members.

20        Here, the equities favor the immediate release of all the names because

21   Plaintiff's motion for certification is currently due on October 19, 2009.

22   (Leviant Decl., ¶ 17.)  Given that the administration of a privacy notice would

23   take, at the very minimum, 30 to 45 days, before the contact information could

24   be released,[9] Plaintiff could not realistically expect to receive the contact

25   information *until right before his motion was due or shortly thereafter.*  (*See, id.*)

26

27

28        [9] This estimate assumes that the notice has already been drafted, agreed to
     by the parties, and then approved of by the court. (*See* Leviant Decl., ¶ ___.)

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, under the circumstances, this Court should overrule Defendant's privacy objections and order them to produce to Plaintiff's counsel the names and contact information of all class members within five days of this order.[10]

### C.    Defendant's "Overbroad" Objections Should Be Overruled

A party objecting to discovery on the basis of overbreadth must support its objection, unless the request appears overly broad on its face.  A conclusory statement is insufficient.  *See Cory v Aztec*, 225 F.R.D. 667, 677 (D. Kan. 2005); *See also St. Paul Reinsurance Co. v. Commer. Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2001).

Defendant has failed to provide any support or explanation for their objection that the interrogatory is overly broad.  In fact, the interrogatory is limited to four years before the filing of the Complaint through the time the lawsuit is finally resolved.  Further, as to scope, the interrogatories are restricted to all persons who have been employed at any of Defendant's retail business locations within the State of California.

Defendant's boilerplate objection is without merit, and should be overruled.

### D.    Relief Requested: Defendant Should Be Compelled to Produce the Names and Contact Information of All Class Members

Plaintiff requests an Order compelling a complete response to Plaintiff's Interrogatory Number 1, to be provided to Plaintiff's counsel within 5 days of

---

[10] If Defendant provides the information within five days, then Plaintiff foregoes any entitlement to sanctions for Defendant's refusal to turn over information that they should have produced without the need for this Motion. However, if Defendant fails to take steps to prepare this information while this Motion is pending, and then claims that it will need more than five days to assemble it, then Plaintiff can and does move for sanctions.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

1    the entry of any Order compelling such production.

2          Pursuant to Fed. R. Civ. P. 37(a)(5), Plaintiff also requests an award of

3    expenses, including reasonable attorneys' fees, incurred as a result of bringing

4    this Motion.  (Leviant Decl., ¶ 21.)

5

6    **IV.    CONTENTIONS OF DEFENDANT**

7          **A.    RELEVANT FACTS**

8          On May 19, 2008, Plaintiff filed a purported class action in Los Angeles

9    County Superior Court alleging, in pertinent part, that Defendant failed to

10   provide meal periods or authorize and permit its employees to take rest breaks.

11   Plaintiff's claims exhibit the pervasiveness of such class actions plaguing

12   employers state-wide.  Despite the fact that J.C. Penney policy has required

13   payment of the meal period sanction to employees that work more than 5 hours

14   without clocking in and out for a full 30 minute meal break since before 2004,[11]

15   and despite the fact that J.C. Penney actually automated its process of paying

16   meal period penalties on April 2, 2006, and despite the fact that J.C. Penney paid

17   meal period penalties to the named Plaintiff, Defendant still finds itself facing an

18   action on a purported class-wide basis.

19         Plaintiff purports to represent a class defined as:  "All non-exempt or

20   hourly paid employees who have been employed by Defendants in the State of

21   California within four years prior to the filing of this complaint until certification

22   of the class in this lawsuit."  (Complaint ¶15, p. 4:4-7.)  From May 19, 2004 to

23   June 6, 2009, a total of 64,529 different individuals worked in non-exempt

24   positions in J.C. Penney's California retail stores.  (J.C. Penney's Responses to

25

26   _____

27         [11] From May 19, 2004 to June 6, 2009, J.C. Penney estimates that it has
     paid approximately $4,840,932 in "meal period premium payments" to hourly-
28   paid employees in its California retail stores.

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Plaintiff's Second Set of Interrogatories No. 3.)  As of July 28, 2009, J.C. Penney
2    employs approximately 11,194 active non-exempt employees in its California
3    retail stores.  (Wallace Decl., ¶ 3.)

4         Prior to the February 3, 2009 removal to federal court, the instant matter
5    was assigned to the Honorable Anthony J. Mohr, of the Complex Division of Los
6    Angeles County Superior Court.  On October 28, 2008, the parties appeared
7    before Judge Mohr for a status conference and discussed mediation.  During that
8    conference Judge Mohr found that while "<u>Belair</u> (sic) and <u>Pioneer</u> pretty well
9    settle the issue of . . .  getting lists . . . and communicating with the class, . . .
10   wanting to talk to all 70,000 [class] members would be over the top.  On the
11   other hand, a few hundred or even up to a thousand would be okay." (Zargarof
12   Decl., ¶ 2; Exh. A; October 28, 2008 Transcript, p. 4:7-15.)  Judge Mohr thereby
13   instructed the parties to be reasonable and meet and confer regarding this issue
14   without the court's involvement.  (<u>Id.</u> at 4:14-15.)  Indeed, Plaintiff's counsel
15   agreed to such a compromise.  (<u>Id.</u> at 4:16-20.)

16        In December 2008, in connection with mediation, Defendant informally
17   produced to Plaintiff contact information for approximately 10,000 former non-
18   exempt California employees who worked for J.C. Penney at its retail stores.
19   (Zargarof Decl., ¶ 3.)  Defendant compiled the random sample of data pursuant
20   to Plaintiff's explicit parameters.  (Wallace Decl., ¶ 3.)  Specifically, Plaintiff
21   requested a random sampling of 2,500 terminated, non-exempt retail employees
22   who were employed with J.C. Penney from November 5, 2005 to December 31,
23   2006; a random sampling of 3,750 terminated, non-exempt retail employees who
24   were employed with J.C. Penney from January 1, 2007 to December 31, 2007;
25   and a random sampling of 3,750 terminated, non-exempt retail employees who
26   were employed with J.C. Penney from January 1, 2008 to September 9, 2008.
27   (Zargarof Decl., ¶ 4.)  This resulted in data for approximately 10,000 employees.
28   (Wallace Decl., ¶ 3.)  Payroll and timesheet data (<u>i.e.</u>, detailed hours and pay

1    information during the class period) was supplied for 3,500 of the 10,000

2    putative class members.  (Zargarof Decl., ¶ 5.)

3        Plaintiff's First Set of Special Interrogatories, served on May 26, 2009,

4    was his first request for the contact information of the entire class

5    (approximately 65,000 individuals).  Defendant met and conferred with Plaintiff

6    in good faith.  (Zargarof Decl., ¶ 6.)  Indeed, Defendant agreed to provide the

7    additional information of employee location and position requested for the

8    10,000 individuals already identified.  (Id.)  However, Plaintiff's only offer to

9    compromise regarding the instant issue was for Defendant to produce

10   approximately 27,500 more names.  (Id.)  Plaintiff's counsel represented that

11   they were unwilling to negotiate any further and the offer was their last, final,

12   and best offer, and would expire shortly thereafter if was motion practice was

13   begun.  (Id.)

14       On July 17, 2009, J.C. Penney responded to Plaintiff's Second Set of

15   Requests for Production of Documents and agreed to produce numerous

16   documents in advance of Plaintiff's class certification motion pursuant to a

17   protective order, which is currently pending before the Court.  (Zargarof Decl., ¶

18   7.)  Specifically, J.C. Penney has agreed to produce:  (1) documents relevant to

19   Plaintiff's employment; (2) policies relevant to Plaintiff's claims; (3) J.C.

20   Penney's pay codes; (4) training materials related to Plaintiff's claims; (5)

21   orientation materials related to Plaintiff's claims; (6) position descriptions for its

22   hourly-paid positions; (7) certain agendas that relate to Plaintiff's claims; (8)

23   additional time sheets and wage statements for 3,500 putative class members;

24   and (9) documents referring to the enforcement J.C. Penney's meal and rest break

25   policies.  (Id.)

26

27

28

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1

**B.    DISCUSSION**

2

    1.    <u>The District Court May Limit Pre-certification Discovery</u>

3 The determination of whether to permit discovery in connection with a

4 motion for a class certification "lies within the sound discretion of the trial

5 court." <u>Kamm v. California City Dev. Corp.</u>, 509 F.2d 205, 209 (9th Cir. 1975)

6 (affirming the trial court's denial of plaintiff's request for discovery after

7 determining there was no need for further discovery).  "And, as in all discovery

8 matters, the district court has broad discretion in limiting the scope of

9 discovery." <u>Stewart v. Winter</u>, 669 F.2d 328, 331 (5th Cir. 1982) (citing <u>Pan-</u>

10 <u>Islamic Trade Corp. v. Exxon Corp.</u>, 632 F.2d 539, 550 (5th Cir. 1980)).  "It is

11 imperative that the district court be permitted to limit pre-certification discovery

12 to evidence that in its sound judgment, would be "***necessary and helpful***" to the

13 certification decision." <u>Id.</u> (emphasis added).  Courts have acknowledged that

14 even when information is relevant, class-wide discovery will not be permitted if

15 it is not necessary or helpful to determining the threshold issues posed by Rule

16 23. <u>Id.</u>

17 Significantly, "Rule 1 of the Federal Rules of Civil Procedure directs that

18 the rules 'shall be construed and administered to secure the just, speedy, and

19 inexpensive determination of every action.'  There probably is no provision in

20 the federal rules that is more important than this mandate.  It reflects the spirit in

21 which the rules were conceived and written, and in which they should be, and by

22 and large have been, interpreted." <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D.

23 281, 283 (C.D. Cal. 1998).  Indeed, sweeping discovery requests are denied

24 when the court finds that such imposition would create a "major burden . . . prior

25 to any determination that the action was maintainable as such." <u>Stewart</u>, 669

26 F.2d at 332.

27 J.C. Penney does not dispute the fact that a plaintiff to a purported class

28 action lawsuit should be afforded the opportunity to discover facts to support his

1   or her claims.  Accordingly, J.C. Penney produced contact information of 10,000

2   current and former employees.  However, J.C. Penney stands on its objections as

3   to Plaintiff's request for information of the balance of putative class.  Plaintiff

4   has not and cannot establish a need for the additional 55,000 names or show how

5   such information will be helpful for purposes of his motion for class

6   certification.  Therefore, the Court has the discretion to deny Plaintiff's request

7   because he has already been given ample information for purposes of class

8   certification.

9

10              2.      The Purpose of the Class Action Vehicle, in Large Part, is to

11                       Adjudicate *Common* Issues of Law and Fact

12          "The class action is designed for the situation, as Rule 23(a)(1) specifically

13   contemplates where 'the class is so numerous that joinder of all members is

14   impracticable.'  It is designed to provide a ***fair and efficient*** procedure for

15   handling claims where the claims or defenses of the parties are typical of the

16   claims or defenses of the class, where there are questions of law or fact common

17   to the class, and where it is fair to conclude that the representative parties will

18   fairly and adequately protect the interests of the class.  It is not intended that

19   members of the class should be treated as if they were parties plaintiff, subject to

20   the normal discovery procedures, because if that were permitted, then the reason

21   for the rule would fail."  Transamerican Refining Corp. v. Dravo Corp., 139

22   F.R.D. 619, 621 (S.D. Tex. 1991).  Even if discovery is relevant under Rule 26,

23   that is not the standard.  Id.  Rather, the discovery must relate to or impact upon

24   common issues at trial or the underlying premises of Rule 23 is thwarted.  Id.

25   (finding that interrogatories propounded as to only 50 individuals out of a class

26   of 6,000 (0.833%) was sufficient).

27          Indeed in Martinet, the Southern District limited a plaintiff in a purported

28   wage and hour class action to discovery only at his location of employment and

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   to the year in which he worked instead of giving Plaintiff unfettered access to

2   10,000 employees across the state in 50 different locations.  <u>Martinet v. Spherion</u>

3   <u>Atlantic Enterprises, LLC</u>, 2008 WL 2557490 *2 (S.D. Cal. 2008).  "Plaintiff has

4   failed to demonstrate good cause warranting this type of expansive discovery of

5   Defendant's roughly 10,000 employees at Defendant's 50 offices throughout the

6   State of California."  <u>Id.</u>

7        Here too, Plaintiff has failed to state good cause.  Taking into account that

8   Plaintiff was actually given information for a random sample of 10,000 current

9   and former employees and still requests more, begs the question how much

10  discovery is necessary to determine whether class treatment is appropriate for

11  this action.  By its very nature, as stated *supra*, a plaintiff for a purported class

12  action should be able to show common issues of law and fact through a ***sampling***

13  of information.  Plaintiff claims that he needs the names of all putative class

14  members to find the "best witness."  This belies the very notion that Plaintiff's

15  claims have the requisite commonality of law and facts needed to maintain a

16  class action.  Moreover, this proffered need to find the "best witness" in actuality

17  evidences that Plaintiff's own claims are not typical of the class or that he is not

18  an adequate representative.  There is simply no other explanation, nor has

19  Plaintiff offered one, that explains how the names of approximately 65,000

20  individuals is needed to bring a ***representative*** action.  Indeed, Judge Mohr –

21  who is very familiar with California wage and hour class actions and the cases

22  cited by Plaintiff – found that just hundreds and at most a thousand total names

23  would be sufficient.  Defendant has produced to Plaintiff almost four times as

24  many names.  It is astounding that Plaintiff has been given the information for

25  one out of every six putative class members and still feels compelled to request

26  the entire lot.  Such request defeats the very economy the class action device is

27  supposed to promote.

28

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S**
**FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

3.    <u>Plaintiff Has Made No Showing Why Such Information Is
Necessary or Helpful To His Class Certification Motion</u>

Plaintiff asserts that it intends to support his class certification motion with testimony obtainable only from putative class members.  (<u>See</u>, *supra*, p. 1:10-11.)  Moreover, Plaintiff claims that he must submit a "spectrum of evidence" to support certification.  (<u>Id.</u> at p. 8:16-17.)  However, it is unclear how the names of 55,000 more current and former employees is necessary to facilitate his efforts.[12]  As an initial matter, Plaintiff has not alleged that he has had trouble contacting putative class members from the list of 10,000 Plaintiff has had for the last eight months, or that he has been unable to obtain relevant testimony.  Moreover, the cases relied upon by Plaintiff do not support his contention that ***all*** class member information is needed.  In <u>Dynamex</u>, the lower court was reversed because it denied the named-plaintiff all access to the putative class.  <u>Lee v. Dynamex, Inc.</u>, 166 Cal. App. 4th 1325, 1326 (2008).  The lower court would not order disclosure of names and contact information until the class had been certified and then subsequently denied class certification because the plaintiff could not show, *inter alia*, commonality or typicality.  <u>Id.</u>  The court held that plaintiff should not have been precluded from the putative class.  This is not the case here.[13]

---

[12] It would be virtually impossible to contact all 65,000 putative class members.  For one of Plaintiff's attorneys to contact everyone from the list of 10,000 between June 29, 2009 (the date one of Plaintiff's counsel began phoning putative class members) and October 19, 2009 (the date Plaintiff's certification motion is due in court) – that attorney would have to make slightly over 89 phone calls per day, including Saturdays, Sundays and holidays.  To make an additional 55,000 phone calls between August 5, 2009 and October 19, 2009, Plaintiff's counsel would have to make 733 calls per day.

[13] Plaintiff also cites to the Ninth Circuit's opinion in <u>In re: Wells Fargo Home Mortgage</u>, *supra*. to caution the court not to rely too heavily on Defendants' policies.  Plaintiff misinterprets the precedent.  Rather, in the <u>Wells Fargo</u> case, the lower court was reversed because it weighed the policies too heavily against declarations that clearly contradicted the existence of common

1    Defendant has cooperated with Plaintiff's investigation, from voluntarily

2    turning over 10,000 names to various documents relating to his claims to actual

3    time records of a 3,500 employees, eight months ago.  As such, not only is

4    Plaintiff's request for more information unfounded, he ignores the spectrum of

5    evidence he already has or will be been given shortly.  With no further showing

6    of how such information is deficient, the Court should not grant Plaintiff's

7    Motion.  To do so would be to allow Plaintiff to simply harass and annoy

8    Defendant for no valid discovery reason.[14]

9

10            4.    Without Any Proffered Necessity For the Additional Names,

11                  the Privacy Rights of 55,000 Individuals Outweigh Plaintiff's

12                  Right to Discovery

13    Although there appears to be a well-settled line of cases in California

14    regarding the privacy issue, none have dealt with the one at hand.  It is clear that,

15    on balance, discovery in a putative class action trumps the privacy rights of

16    purported class members.  However, there is no case which finds that all privacy

17    rights are trumped by the mere filing of a lawsuit.  The balancing of privacy

18    rights against discovery necessity still exists as acknowledged by Judge Mohr –

19    who  indeed cited to the same line of cases that Plaintiff does here – when he

20

21

22    law and facts.  The Ninth Circuit did not hold that declarations were as a matter
      of course superior to the other forms of evidence.

23
      [14] The parties have stipulated to a protective order wherein Plaintiff has
24    agreed that confidential information, such as the employee information requested
      herein, is *only* to be used for purposes of prosecuting *this* litigation.  It is
25    therefore troubling that Plaintiff's papers seem to imply that the information
      requested is to discuss Defendant's "other policies."  (See, *supra*, p. 9:6-9.)  It
26    would be a grave abuse of the discovery process if Plaintiff's true intent for the
      instant request was to conduct a fishing expedition for unrelated claims.  See,
27    e.g., Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)
      (stating "[t]he courts, as well as practicing attorneys, have a responsibility to
28    avoid the stirring up of litigations through unwarranted solicitation").

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1**

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  stated that "wanting to talk to all 70,000" class members was too much.[15]

2  Indeed, "[t]he initiation of a law suit, does not, by itself, grant plaintiffs the right

3  to rummage unnecessarily and unchecked through the private affairs of anyone

4  they choose.  A balance must be struck."  Jimenez v. Domino's Pizza, LLC, 2006

5  U.S. Dist. LEXIS 66510 *8 (C.D. Cal. 2006) (ordering defendant to turn over

6  contact information after *refusing* to provide the information at all).

7

8            5.      Compelling Defendant to Turn Over the Remaining 55,000

9                    Names Will Disrupt Its Business

10       Defendant concedes that as a party to litigation, a "certain" amount of

11  discovery is necessary.  Nevertheless, turning over 10,000 names to Plaintiff has

12  already resulted in confusion to the putative class members.  Current and former

13  employees have approached J.C. Penney and asked why they were receiving

14  telephone calls and letters in the mail.  In some instances, the confusion has

15  caused putative class members to believe that J.C. Penney had in fact wronged

16  them – even though that issue has not been decided.  There is tangible prejudice

17  to J.C. Penney from Plaintiff contacting the putative class.  It is already creating

18  an impression that J.C. Penney has done something unlawful, when ironically it

19  has been paying the meal period premium for the class period even when it may

20  not have been due.  The disruption to J.C. Penney's business from the ill-feelings

21  from its associates will only be exacerbated if Defendant is compelled to turn

22  over the remaining 55,000 names.  Due to the nature of the J.C. Penney retail

23  business, the disgruntled feelings of sales employees affect sales negatively and

24

25       [15] Plaintiff cites to Babbit as support for the production of contact
26  information for 40,000 individuals.  1992 U.S. Dist. LEXIS 19091 (N.D. Cal.
    1992).  However, the Babbit court did not hold that providing a significant
27  portion of the information from the putative class to a plaintiff was insufficient
    for purposes of class certification.  Moreover, the Babbit court found the
28  defendant's burdensome objection unavailing.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

1   as such, if discovery of this nature is not necessary it should be denied.[16]

2

3                    6.    Plaintiff Has Equal Access to the Putative Class

4        Plaintiff argues that he is entitled to the 65,000 names for no other reason

5   than because Defendant has access to such information.  This is not compelling.

6   Plaintiff has equal access to the putative class as Defendant has done nothing to

7   hamper his investigation into the claims with current or former employees.

8   Indeed, since Defendant produced the list of 10,000 individuals, at least 90

9   employees have been rehired.  Defendant is informed and believes (and Plaintiff

10  does not dispute) that Plaintiff has indeed made contact with current employees

11  and has received additional information of other current employees whose names

12  did not appear on the original list of 10,000 as some of those employees have

13  reported those communications to Defendant.

14       Plaintiff further asserts that he only has access to former employees.

15  However, remarkably Plaintiff has not and cannot allege that he has been *unable*

16  to speak with current employees.  As stated above, Defendant is aware that such

17  a claim would be disingenuous.  But, what is more misleading is that Plaintiff

18  implies that Defendant has intentionally precluded Plaintiff from contact

19  information of current employees when Defendant produced the 10,000 names

20  per Plaintiff's instruction.  At most, Defendant should be required to produce to

21  Plaintiff no more than a few hundred additional names of current employees as

22  suggested by Judge Mohr.  Again, Plaintiff's argument that it should have equal

23  access to the putative class is unavailing because not only has Plaintiff contacted

24  current employees, but "access" to the entire class is a misnomer.  It would be

25

26

27       [16] Defendant withdraws their overbroad objection to the extent that
        Plaintiff has, for the first time, narrowed the putative class definition to retail
28      stores.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S
FURTHER RESPONSES TO INTERROGATORY NO. 1

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   virtually impossible, nor practical, for either party to contact all 65,000 putative

2   class members.

3

4          7.    <u>If the Court is Inclined to Grant Plaintiff's Motion, Defendant

5                Requests That The Court Order Only Another Portion of the

6                Putative Class and Not the Remainder</u>

7          As stated above, no case cited herein stands for the proposition that all

8   contact information for all putative class members must be turned over in every

9   case filed as a class action.  Each situation is unique and requires the Court to

10  use its own discretion to find a balance between the rights of ***both*** parties.

11  Accordingly, if the Court is inclined to grant Plaintiff's Motion, Defendant

12  requests that still less than the remainder of the information is ordered so as to

13  help minimize the disruption to Defendant's business and that the Belaire-West

14  process be allowed to mitigate the privacy intrusion.  Defendant has, throughout

15  this litigation, met and conferred with Plaintiff in good faith and as such requests

16  that Plaintiff's request for sanctions be denied.

17

18  **V.    CONCLUSION**

19  **A.    Plaintiff's Conclusion**

20         Class members' names and identities are discoverable.  Access by *all*

21  parties to the names and contact information of *all* class members is necessary to

22  ensure a level playing field in the discovery process.  Plaintiff must have fair and

23  equal access to class members so that he has an unfettered opportunity to

24  substantiate the elements of class certification and anticipate Defendant's

25  defenses to certification.  At this time, Defendant, alone, has access to all 65,000

26  witnesses, and exclusive access to current employees, while Plaintiff has access

27  to far less than 20% of the putative class members, who are predominantly

28  former employees.  Therefore, Plaintiff requests an Order compelling a complete

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  response to Plaintiff's Interrogatory No. 1, to be provided to Plaintiff's counsel

2  within 5 days of the entry of any Order compelling such production.

3    **B.    Defendant's Conclusion**

4    Plaintiff has failed to demonstrate how the contact information for 10,000

5  current and former employees and an assortment of relevant documents are

6  insufficient for him to bring a motion for class certification.  "[D]iscovery is not

7  an open range for plaintiffs to ride roughshod in the hope that their claims may

8  find support."  See <u>Rojas v. Brinderson Constr. Inc.</u>, 567 F. Supp. 2d 1205 (C.D.

9  Cal. 2008).  According, Defendant requests that Plaintiff's Motion be denied.

10

11                  Respectfully submitted,

12  Dated:  August 3, 2009          Initiative Legal Group APC

13

14                  By: _____

15                    H. Scott Leviant
                    Payam Shahian
                    Linh Hua

16

17                  Attorneys for Plaintiff Joshua Munoz

18  Dated:  August 3, 2009          Sheppard Mullin Richter &
                    Hampton LLP

19

20                  By: _____

21                    Jennifer B. Zargarof
                    Julie Wong

22                    Attorneys for Defendants
                    J.C. Penney Corporation, Inc. and
23                    J.C. Penney Company, Inc.

24

25

26

27

28

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO INTERROGATORY NO. 1**

Initiative Legal Group APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067