Jose R. Garay, SBN 200494
JOSE GARAY, *APLC*
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel: (949) 260-9193/Fax: (949) 260-9194

Roger Carter, SBN 140196
THE CARTER LAW FIRM
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel: (949) 260-4737/Fax: (949) 260-4754

Scott B. Cooper, SBN 174520
THE COOPER LAW FIRM, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel: (949) 724-9200/Fax: 949) 724-9255

James R. Hawkins
HAWKINS & SOFONIO
7700 Irvine Center Drive, Suite 800
Irvine, CA 92618
Tel: (949) 788-2911/Fax: (949) 788-2912

Attorneys for Plaintiff, MARK ORTIZ, on behalf of himself and all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ORTIZ on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KMART, form unknown, and DOES 1 through 500, inclusive,<br><br>Defendants. | Case No. SACV06-638 ODW (ANx)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 3, 2008<br>Time: 1:30 p.m.<br>Courtroom: 11<br><br>Filed concurrently herewith: (1) Declaration of Scott B. Cooper; (2) Stipulation of Class Action Settlement; and (3) [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Certifying Class Action Conditionally for Purposes of Settlement |

1  PLEASE TAKE NOTICE that on March 3, 2008, at 1:30 p.m., or as soon
2  thereafter as the matter may be heard, in Courtroom 11 of the above-entitled Court
3  located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff Mark Ortiz
4  ("Plaintiff") will bring for hearing his Motion for Preliminary Approval of Class
5  Action Settlement pursuant to Federal Rule of Civil Procedure 23(e).

6  This Motion for Preliminary Approval of Class Action Settlement is based upon
7  this Notice, the Memorandum of Points and Authorities in support thereof, the
8  Stipulation of Class Action Settlement, the Proposed Notice to Class Members of
9  Pendency of Class Action Settlement, the Proposed Order filed concurrently herewith,
10 all pleadings, records and files herein, and upon such oral argument as may be made at
11 the hearing on this Motion for Preliminary Approval of Class Action Settlement.

DATED: February 6, 2008          THE COOPER LAW FIRM, P.C.

                                  BY: _____
                                      Scott B. Cooper
                                  Attorneys for Plaintiff, MARK ORTIZ

2

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS
I. INTRODUCTION AND FACTUAL BACKGROUND ........................ 1
   A. Summary of Litigation ................................................. 1
   B. Mediation and Settlement ............................................ 1
II. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................................................................ 3
   A. Standard for Approval ................................................. 4
   B. The Settlement Meets the Standard For Preliminary Approval ...... 5
      1. The Extent of Discovery Completed and the Stage of Proceedings ......................................................... 5
      2. The Risk, Expense and Likely Duration of Further Litigation Make it Fair, Reasonable and Adequate to Settle This Action ............................................... 6
      3. The Amount Offered in the Settlement ......................... 8
      4. Experience and Views of Counsel .............................. 9
      5. Response of Class Members to Proposed Settlement ............ 9
      6. The Proposed Notice to the Class Is Adequate .................. 9
III. CONCLUSION ........................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*In re Heritage Bond Litigation*, 2005 WL 1594403 ............................................. 3

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................... 3

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976). ........................ 3

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   221 F.R.D. 523, 524 (C.D. Cal. 2004) ............................................................ 3, 6

*Colesberry v. Ruiz Food Products, Inc.*, 2006 WL 187444 (E.D. Cal. 2006) .... 3

*In re Jiffy Lube Sec. Litigation*, 927 F.2d 155 (4th Cir. 1991) ........................... 3

*Gatreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ............................................... 4

*Officers for Justice v. Civil Service Comm'n of the City and
   County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................ 4, 6

*In re Microstrategy, Inc. Sec. Litigation*,
   148 F.Supp.2d 654 (E.D. Va. 2001) ................................................................. 4

*Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974) ... 6

*White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) .................. 7

*Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005) .................... 7

*Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980) ............... 10

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) ...................................... 10

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............ 10

# TABLE OF AUTHORITIES (CONT'D)

**RULES**

Federal Rules of Civil Procedure, Rule 23(e) ........................................................3

Federal Rule of Civil Procedure, Rule 30(b)(6) ....................................................5

**TREATISES**

Manual for Complex Litigation, Third (1995)......................................................3

Manual For Complex Litigation, Fourth (2004) ..................................................4

*Newberg on Class Actions* (4th ed. 2002) ...........................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND

### A. Summary of Litigation

Plaintiff Mark Ortiz ("Plaintiff" or "Class Representative") filed the instant lawsuit against Defendant Kmart Corporation ("Defendant" or "Kmart") in the Orange County Superior Court on April 21, 2006. Plaintiff alleged a class action on behalf of all non-exempt employees who were employed by Defendant in California on or before April 21, 2002. On July 12, 2006, Defendant removed the lawsuit to the United States District Court. Upon stipulation by the parties, the Court subsequently limited the liability period for which damages are being sought to the period beginning April 23, 2003.

The Complaint alleged claims under California law for (1) failure to pay wages; (2) failure to provide rest periods and meal periods or compensation in lieu thereof; (3) failure to pay wages of terminated or resigned employees; (4) knowing and intentional failure to comply with itemized employee wage statement provisions; and (5) violation of the unfair competition law. The Complaint also sought waiting time penalties, pre-judgment interest, and attorneys' fees and costs.

### B. Mediation and Settlement

Over one and one-half years after the filing of the complaint in this action, the parties participated in mediation on November 15, 2007 before Mark S. Rudy, an experienced neutral mediator. (Declaration of Scott B. Cooper ("Cooper Decl.") ¶ 5.) The mediation was productive, and Mr. Rudy issued a mediator's proposal on November 21, 2007. (*Id.*) The Parties accepted the mediator's proposal on December 3, 2007, and reached the terms of the settlement set forth in the Stipulation of Class Action Settlement (the "Stipulation"). (*Id.*)

///

1

The principal settlement terms are as follows:

1. Kmart will pay a Maximum Settlement Consideration of $8,000,000 to settle the lawsuit (Stipulation section 4.1);

2. Class members who wish to receive payment under the Settlement must submit claims forms during the notice period (Stipulation sections 8.4, 9.1);

3. Class members who submit valid and timely claims forms shall be paid a payment based on the number compensable workweeks they worked during the class period (Stipulation section 4.2);

4. In no case will Kmart pay less than half of the Net Settlement Consideration (which is the Maximum Settlement Consideration less Plaintiff's attorneys' fees, costs, and enhancement award to the Class Representative) to class members that participate in the settlement award (Stipulation section 4.7);

5. Plaintiff will request an enhancement award in the amount of $5,000 to compensate for his time, effort and participation in the lawsuit; Defendant does not oppose this request (Stipulation section 6.1);

6. Class counsel seeks an award of attorneys' fees of no more than 25% of the Maximum Settlement Consideration, plus an award of actual litigation costs not to exceed $40,000; Defendant does not oppose this request (Stipulation section 5.1);

7. Class members who do not timely request exclusion from the settlement shall be deemed to release all claims, known and unknown, reasonably related to any claims that were alleged in the lawsuit (Stipulation section 11.1).

| | |
|---|---|
| 1 | Plaintiff brings this Motion for Preliminary Approval of the Class Action |
| 2 | Settlement, which Plaintiff believes is fair and reasonable, and adequately protects the |
| 3 | interests of all parties. |

## II. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This policy is driven by "an overriding public interest in settling and quieting litigation. . . . [t]his is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

This approval "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 524 (C.D. Cal. 2004), citing Manual for Complex Litigation, Third, § 30.41 at 236-37 (1995). *See also Colesberry v. Ruiz Food Products, Inc.*, 2006 WL 187444, *6 (E.D. Cal. 2006), citing *In re Jiffy Lube Sec. Litigation*, 927 F.2d 155, 158 (4th Cir. 1991) ("The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing'").

A. **Standard for Approval**

At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d at 1276. *See also Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("the court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned"). There is further a "strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litigation*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001).

Although at this stage of preliminary approval, the Court is not expected to engage in the more rigorous analysis as is required for final approval (*see* Manual For Complex Litigation, Fourth, § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> . . . the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural*, 221 F.R.D. at 525-26. District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

**B.    The Settlement Meets the Standard For Preliminary Approval.**

   **1.    The Extent of Discovery Completed and the Stage of Proceedings**

Before engaging in settlement discussions, the parties conducted significant discovery, both formal and informal. (Cooper Decl. ¶ 6.) Plaintiff served interrogatories and document requests on Defendant, who – in turn – responded to that discovery and produced over nine hundred pages of documents. (Cooper Decl. ¶ 6.) As part of its discovery, Defendant provided Plaintiff with a random sampling of time entries from approximately 500 putative class members, which encompassed over 250,000 lines of data representing over 77,000 different shifts. (*Id.* at ¶ 7.) Plaintiff had this data thoroughly reviewed and analyzed by Philip C. Gorman, Ph.D. of Phillips Fractor Gorman. Dr. Gorman is a professor at Cal State University Northridge and is a recognized expert in evaluating and analyzing this sort of data. Dr. Gorman and his staff spent over eighty-five (85) hours analyzing the data to determine the extent of the alleged meal period violations. (*Id.*)

The parties have taken two key depositions in this case. (*Id.* at ¶ 8.) Defendants deposed Plaintiff Mark Ortiz. (*Id.*) Plaintiff noticed the deposition of Kmart under Federal Rule of Civil Procedure 30(b)(6), Kmart designated a "person most knowledgeable" for subject matters listed in the notice, and Plaintiff deposed that witness. (*Id.*) This deposition included a number of topics that are key to the allegations in the lawsuit including, but not limited to: Kmart's policies, procedures, and practices regarding meal and rest periods; Kmart's policies, procedures, and practices regarding the payment of additional compensation for meal period violations; Kmart's policies, procedures, and practices regarding the dismissal of non-exempt employees at the end of their shifts, including whether any employees were required to remain at the store after clocking out; and Kmart's organizational structure for its stores in California. (*Id.*)

5

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

This discovery gave Plaintiff the opportunity to do an analysis of the strengths and weaknesses of the case. (*Id.* at ¶ 9.) Plaintiff was able to weigh the advantages of settlement versus trial and potentially lengthy appeals on a fully informed basis after completion of the initial discovery phase. Plaintiff considered the fact that, although the case has been pending for over one and one-half years, the litigation is still in its early stages, and would necessarily involve a motion for class certification and potentially involve dispositive motions. (*Id.*) Plaintiff also considered all factual and legal issues relating to the merits in reaching the decision to settle the case. (*Id.*)

### 2. The Risk, Expense and Likely Duration of Further Litigation Make it Fair, Reasonable and Adequate to Settle This Action.

Unless a settlement is clearly inadequate, in most situations "its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See Nat'l Rural*, supra, 221 F.R.D. at 526, quoting 4 *Newberg on Class Actions*, § 11.50 at 155 (4th ed. 2002). *See also Officers for Justice*, 688 F. 2d at 625 ("it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution") Thus, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974).

The parties have a clear interest in settling this action because of the risk inherent in continued litigation. Beyond the risks that are inherent in any litigation, this lawsuit has risks that are unique to this case. In particular, there is the uncertainty of the outcome of a class certification motion. Further, assuming such a motion was granted, both parties would face the risk of losing on the merits at trial. Plaintiff

provides the following examples as considerations unique to his determination that the proposed settlement is fair, reasonable and adequate.

One of the main claims in the lawsuit is that Defendant failed to provide meal and rest breaks to Plaintiff and the other putative class members. Defendant will argue that it maintains and posts a meal and rest period policy specific to California that details when meal and rest breaks must be taken. Defendant would likely also offer testimony in support of its arguments that it provides lawful meal and rest periods. Such evidence can potentially hinder the Plaintiff's pursuit of the litigation, with respect to class certification, a motion for summary judgment and at trial.

Also, Defendant will likely argue that, under California law, an employee cannot recover where he voluntarily takes a meal period after working more than five hours, takes a short meal period, or is given the opportunity to take a meal period and fails to do so. Plaintiff does not agree with Defendant's interpretation of the legal meal period requirements and would vigorously argue that employees are entitled to recover under the above circumstances under binding California law. One published District Court opinion has stated that, under California law, an employer need only offer and permit meal periods, not ensure that they are taken. *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089 (N.D. Cal. 2007). The California Court of Appeal has held to the contrary. *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962-63 (2005). Nevertheless, this issue raises the specter of a change in the law that could significantly affect the value of Plaintiff's meal period claims.

With regard to the "off the clock" claim, Defendant will argue that it maintains policies prohibiting employees from working "off the clock", has modified certain business systems (e.g. cash registers and handheld scanners) so that they cannot be used while employees are clocked out of Defendant's time keeping system, and, that if employees did work "off the clock", they did so without Defendant's knowledge.

7

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiff has considered the risk that these and other facts might impact Plaintiff's case in future litigation, along with the fact that the case is still at an early stage. Although the parties have engaged in initial discovery and analysis, discovery has not been completed. (Cooper Decl. ¶ 10.) There is no trial date set at this point. (*Id.*) Further litigation would inevitably involve a motion for class certification by the Plaintiff and likely a dispositive motion by Defendant. No matter what the result of any such motions and/or trial, there could also be time-consuming and costly appeals. Thus, there is a substantial risk that continued and protracted litigation will result in the significant expenditure of additional time, effort, and resources of this Court, the parties' counsel and the parties themselves.

Under these circumstances, the proposed settlement here is not only fair, reasonable and adequate, but also holds clear advantages over the speculative, continued, and protracted litigation of the action.

### 3. The Amount Offered in the Settlement

Kmart has agreed to pay eight million dollars to settle the lawsuit. The actual amount that will be paid, under the settlement, will depend on the number of class members that make claims for settlement payments. In no case, however, will the total settlement payments to class members be less than fifty percent of the portion of the settlement that is allocated to class member payments. This confers a substantial benefit on those class members who feel entitled to compensation for the claims in the lawsuit – exactly those class members that the settlement should rightly benefit. (Cooper Decl. ¶ 11.)

Although Defendant had hoped to settle for a smaller amount and Plaintiff had hoped to settle for a larger amount, this settlement represents a compromise by the parties in light of the above-described risks and costs in proceeding with litigation.

### 4. Experience and Views of Counsel

Class counsel – Jose Garay, Roger Carter, Scott Cooper, and James Hawkins – have collectively practiced law for over 50 years. They have cumulatively personally handled more than 30 class actions to conclusion and are currently prosecuting over 30 more, almost all of which were and are wage and hour cases similar to the present case. (Cooper Decl ¶ 12.) Based on this combined experience, Class Counsel believe the proposed settlement is fair, adequate and reasonable, especially given the risk, expense and likely duration of further litigation. (*Id.*)

### 5. Response of Class Members to Proposed Settlement

To date, no putative class members have expressed any opposition to the proposed settlement. To the extent that there are any objectors once the parties send notice, those individuals will have the opportunity to file their objections pursuant to the settlement agreement and proposed notice. In addition, class members may opt out of the class. The putative class members should have the opportunity to consider the proposed settlement. Plaintiff requests that the Court grant preliminary approval of the settlement and consider the opposition, if any, to the proposed settlement at the final fairness hearing.

In sum, each of the relevant factors weighs in favor of granting preliminary approval of the settlement. At this stage, the proposed settlement clearly falls within the range of possible approval. Therefore, the Court should grant preliminary approval and allow notice to be sent to the class.

### 6. The Proposed Notice to the Class Is Adequate

The parties have negotiated the form of the Notice to be disseminated to Class Members to notify them of the terms of the Settlement and of their rights in connection with the Settlement. The Notice is attached to the Stipulation as Exhibit "A". The Notice will be sent by regular mail to Class Members to inform them of the terms of the Settlement, their rights in connection with the Settlement and the date of

| | |
|---|---|
| 1 | the hearing at which the parties will submit the Settlement for final approval by the |
| 2 | Court. Notice is satisfactory if it "generally describes the terms of the settlement in |
| 3 | sufficient detail to alert those with adverse viewpoints to investigate and to come |
| 4 | forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352* |
| 5 | *(9th Cir. 1980)*. Mailed notice is the preferred method of notice where the names and |
| 6 | addresses of class members "may be ascertained through reasonable effort." *Eisen v.* |
| 7 | *Carlisle and Jacquelin,* 417 U.S. 156, 173 (1974). The Notice has been carefully |
| 8 | drafted to "apprise interested parties of the pendency of the action and afford them an |
| 9 | opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust* |
| 10 | *Co.,* 339 U.S. 306, 315 (1950). This Court should find that the Notice and the |
| 11 | procedures for its dissemination are reasonably calculated to provide notice of the |
| 12 | Settlement to the Class. |

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the settlement as contained in the Stipulation of Class Action Settlement, including conditional certification of the class, (2) approve and authorize mailing of the Notice to Class Members of Pendency of Class Action Settlement, filed concurrently herewith, and (3) set a final approval hearing on the Class Action Settlement.

DATED: February 6, 2008                    **THE COOPER LAW FIRM, P.C.**

BY: _____
Scott B. Cooper
Attorneys for Plaintiff, MARK ORTIZ